The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, *et al.*,

                            Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

                            Defendants.

Case No. 2:26-cv-02409-KKE

**DEFENDANTS' OPPOSITION TO MOTION FOR A TEMPORARY RESTRAINING ORDER**

Noted for Consideration:
July 20, 2026.

Defendants United States Department of Education (ED) and Linda McMahon, in her official capacity as United States Secretary of Education, oppose the application for a temporary restraining order (TRO) filed by the Plaintiff States. As a threshold, dispositive matter, Plaintiffs cannot meet their burden of demonstrating this Court's jurisdiction over their claims. Moreover, Plaintiffs provide no evidence supporting the purported factual basis for their application—the so-called "Washington Plan"—which does not, in fact, exist; and the evidence they do provide demonstrates that they cannot identify a final agency action under the Administrative Procedure Act (APA) in any event. The Court should deny Plaintiffs' application for a TRO.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 1

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

**BACKGROUND**

The Court is familiar with the background to these related cases and the parties' arguments regarding Defendants' motion for clarification in *State of Washington v. U.S. Department of Education*, No. 25-cv-01228 (*Washington v. ED I*). Defendants briefly summarize key points here.

The Court issued an injunction in *Washington v. ED I*, on December 19, 2025. *Id.* Dkt. 270. That order enjoined ED from non-continuing the relevant grants under 34 C.F.R. § 75.253. *Id.* at 2. It also enjoined ED from implementing its "Directive procedure" with respect to any discontinued grant. *Id.* at 1. ED has complied with that injunction. *See id.* Dkts. 274, 361, 365, 366, 442, 445 (Defendants' status reports regarding compliance). Nonetheless, Plaintiffs subsequently filed two motions to enforce the Court's injunction—both of which the Court denied—and then a motion for reconsideration of the Court's second denial, which the Court also denied. *Id.* Dkts. 288, 356, 367, 433, 440.

On June 10, 2026, in an abundance of caution, ED filed a motion for clarification of the Court's injunction, explaining that it intended to terminate some or all of the relevant grant agreements, under a different regulatory authority than that litigated in *Washington v. ED I*, and without using the Directive procedure. *Id.* Dkt. 437 at 5; *see id.* Dkt. 447, ¶¶ 4-5 (Declaration of Murray Bessette, affirming that ED "does not currently rely upon or enforce the Directive procedure" and that, as of July 1, 2026, the Directive procedure "has not been in effect for over a year"). The Court set a hearing on ED's motion for clarification for July 24, 2026. *Id.* Dkt. 441.

A full month after ED filed its motion for clarification, and just two weeks before the Court's scheduled hearing on that motion, Plaintiffs filed this lawsuit seeking to enjoin ED's potential grant terminations under the APA and the Spending Clause. Dkt. 1. Plaintiffs simultaneously filed this motion, for a preliminary injunction or in the alternative a TRO, which the Court subsequently ordered be construed as a motion for a TRO. Dkts. 10, 22. In their motion,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 2

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Plaintiffs argue, without evidence, that ED is, despite its sworn statements to the contrary, illicitly using the enjoined Directive procedure to inform its possible grant terminations, and ask the Court to issue an order "to protect the grants from termination." Dkt. 10 at 1-2, 9.

## STANDARD OF REVIEW

Sovereign immunity "shields the Federal Government and its agencies from suit" unless Congress has expressly waived immunity. *Harger v. Dep't of Lab.*, 569 F.3d 898, 903 (9th Cir. 2009) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)). This is "a 'high standard.'" *Harger*, 569 F.3d at 903-04 (quoting *Blue Fox*, 525 U.S. at 261). Unless a plaintiff "satisfies the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed." *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008) (citation omitted).

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the TRO standard is "substantially identical" to preliminary injunction standard). A petitioner must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) the TRO sought "is in the public interest." *Winter*, 555 U.S. at 20. These factors are mandatory. As the Supreme Court has made clear, "[a] stay is not a matter of right, even if irreparable injury might otherwise result," but is instead an exercise of judicial discretion that depends on the particular circumstances of the case. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 3

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

**ARGUMENT**

Plaintiffs' bid for a TRO fails for the fundamental reason that they cannot show the Court has jurisdiction to order the relief they seek. This failure is dispositive. But even if Plaintiffs could show jurisdiction, they cannot show likelihood of success on their claims, and the remaining *Winter* factors also favor the government.

**I.     This Court Lacks Jurisdiction To Order the Relief Plaintiffs Seek**

Plaintiffs are not likely to succeed on the merits here, because they cannot establish this Court's jurisdiction. Under recent, binding Supreme Court and Ninth Circuit precedent, the Court of Federal Claims has exclusive jurisdiction to adjudicate challenges to federal grant terminations. *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ----, 145 S. Ct. 2658, 2659 (2025) ("*NIH*"); *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025).

The APA's limited waiver of sovereign immunity for claims against the United States "seek[ing] relief other than money damages," *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (quoting 5 U.S.C. § 702), does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *California*, 604 U.S. at 651 (same). One such statute is the Tucker Act, which "vests exclusive jurisdiction in the Court of Federal Claims over any claim against the United States founded 'upon any express or implied contract with the United States.'" *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1139 (9th Cir. 2025) (quoting 28 U.S.C. § 1491(a)(1)).

In analyzing whether a particular action is "at its essence a contract action" subject to the Tucker Act, what matters is substance, not labels: a court must examine: (1) "the source of the rights upon which the plaintiff bases its claims"; and (2) "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (citation omitted); *see United*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 4

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Aeronautical*, 80 F.4th at 1025 (*Megapulse* test applies in the Ninth Circuit). Here, Plaintiffs' claims fail both prongs of that test: (1) Plaintiffs seek to enforce rights under their contracts with the government; and (2) as relief, Plaintiffs seek specific performance of those contracts.

Defendants recognize that the Court heard similar arguments to those set out here in connection with Defendants' Fall 2025 motion to dismiss in *Washington v. ED I*. *See* No. 25-cv-01228, Dkts. 161, 190. But both the law and the facts have developed since the Court denied that motion. On the law, at that time, the Court did not have the benefit of the Ninth Circuit's December 23, 2025 opinion in *Thakur*, 163 F.4th at 1204, holding that *NIH* foreclosed district court jurisdiction over APA claims "challenging grant terminations"—binding precedent which Plaintiffs' motion for a TRO noticeably ignores. And on the facts, as discussed further below, Plaintiffs now seek the same relief as the plaintiffs in *California*, *NIH*, and *Thakur*—namely, an order preventing Defendants from terminating their grants.

## A. Plaintiffs Seek To Enforce Contractual Rights

Under the first *Megapulse* factor, the Court must examine what rights Plaintiffs seek to enforce. "If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does, even if the plaintiff formally seeks injunctive relief." *United Aeronautical*, 80 F.4th at 1026 (emphasis in original). To determine whether the source of the rights in question is contractual, a court must consider whether "the plaintiff's asserted rights and the government's purported authority arise from statute"; whether "the plaintiff's rights exist prior to and apart from rights created under the contract"; and whether "the plaintiff seeks to enforce any duty imposed upon the government by the . . . relevant contracts to which the government is a party." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (cleaned up).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 5

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Here, the source of Plaintiffs' claimed rights is their grant agreements. If the grants that Plaintiffs seek to prevent ED from terminating had never existed, Plaintiffs would have no claim to funds from ED. Notably, in contrast to Plaintiffs' claims in *Washington v. ED I*, Plaintiffs now seek to enjoin, not the non-continuation of their grants, but their *termination*. And that difference is material: as Plaintiffs themselves admitted "[u]nlike grant terminations, grant discontinuances do not involve a contractual breach of the obligation to pay for the obvious reason that grantees are still getting paid." *Washington v. ED I*, Dkt. 174 at 23 (arguing that the difference between grant non-continuation and grant termination was a "material fact" which Defendants "contort[ed] . . . because otherwise their Tucker Act defense fails"). But, as Plaintiffs argument acknowledged, and as the Supreme Court held, a claim seeking to prevent *termination* of a grant seeks an order "to enforce a contractual obligation to pay money"—and such relief is the exclusive province of the Court of Federal Claims. *California*, 604 U.S. at 651; *see NIH*, 145 S. Ct. at 2659 (district court lacks jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to [terminated] grants"); *Thakur*, 163 F.4th at 1204 (under *NIH*, district courts lack jurisdiction to adjudicate "similar APA claims challenging grant terminations").

That Plaintiffs here try to frame their claims as statutory or regulatory is immaterial. As the Seventh Circuit has observed, "every government agency is bound to follow some set of regulations." *Evers v. Astrue*, 536 F.3d 651, 661 (7th Cir. 2008) (quotation omitted). If merely alleging that those regulations were violated was sufficient to evade the jurisdiction of the Court of Federal Claims, "every government contractor could recast its contract claims as regulatory claims." *Id.* (quotation omitted). So, for example, the plaintiffs in *California*, much like Plaintiffs here, argued that the district court had jurisdiction over their APA claims because they alleged that the grant terminations were "contrary to the Department's regulations and arbitrary and capricious when viewed in light of the statutes authorizing those grants." Opp'n to Stay Application at 22,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 6

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Dep't of Educ. v. California*, No. 24A910, Dkt. 3, 2025 WL 963588 (U.S. 2025); *see also id.* ("The controversy thus centers around federal statutes and regulations."). Nonetheless, the Supreme Court found that the government was likely to succeed in showing that the claims belonged in the Court of Federal Claims under the Tucker Act. *California*, 604 U.S. at 651. Likewise, the plaintiffs in *NIH* tried to circumvent the Tucker Act by arguing, like plaintiffs here, that certain "agency-wide policies" were unlawful "because they violate[d] various federal statutes and the Constitution . . . and that the [grant] terminations flowed directly from those unlawful policies." *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 51 (1st Cir. 2025). But, again, the Supreme Court stayed "the District Court's judgments vacating the Government's termination of various research-related grants" because the APA did "not provide the District Court with jurisdiction" to order such relief. *NIH*, 145 S. Ct. at 2659. Finally, in *Thakur*, the Ninth Circuit confirmed that it is "bound by *NIH*," and that the APA simply does not provide district courts with jurisdiction to adjudicate claims like these "challenging grant terminations." 163 F.4th at 1204.

Finally, Plaintiffs' "Spending Clause" label is ineffective for the same reason. The Tucker Act "prevents constitutional claims that are dependent on rights under a government contract from being brought in the district court." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 648 (9th Cir. 1998). And here, the source of all Plaintiffs' claims, regardless of their label, is contractual: Plaintiffs seek to force ED to continue paying on their grant agreements.

**B. Plaintiffs Seek Contractual Relief**

Under the second *Megapulse* factor, the Court must examine what relief Plaintiffs want. Where, as here, a plaintiff seeks to enforce a contractual agreement with the federal government and obtain the payment of money, the inquiry is straightforward: a district court "cannot order the Government to pay money due on a contract." *U.S. Conf. of Catholic Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025). A request for an order that the government "must

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

perform" on its contract is one that "must be resolved by the Claims Court." *Id.* (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985)); *see California*, 604 U.S. at 651.

Plaintiffs assert that their APA claims are not contractual because they seek injunctive relief. Dkt. 10 at 11 n.5. But that is incorrect. While Plaintiffs artfully draft their proposed order to avoid the word "termination," their motion makes clear what they want: a Court order "to protect the grants from termination." Dkt. 10 at 9. And that relief is substantially the same as the relief ordered by the district courts in *California*, *NIH*, and *Thakur*—and stayed or overturned for lack of jurisdiction by the Supreme Court and the Ninth Circuit.

In *California*, the Supreme Court stayed a district court's TRO "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." 604 U.S. at 651. The Court found the injunction barring ED from terminating grants was effectively an order "to enforce a contractual obligation to pay money," and that the government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id.* Similarly, in *NIH*, the district court had "vacate[d] the Government's termination of various research-related grants," but the Supreme Court stayed that judgment, holding that the district court likely lacked jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." 145 S. Ct. at 2659. And, again, *Thakur* confirmed that an injunction preventing the government from terminating grants is "designed to enforce an[] obligation to pay money pursuant to [the] grants at issue," and therefore falls under the jurisdiction of the Court of Federal Claims. 163 F.4th at 1204 (quoting *NIH*, 145 S. Ct. at 2658). If the *California*, *NIH*, and *Thakur* district courts lacked jurisdiction to order such relief, it follows that this Court does as well.

In sum, Plaintiffs seek to enforce contractual rights and gain contractual relief. Under the Tucker Act, their claims fall under the exclusive jurisdiction of the Court of Federal Claims.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 8

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

**II.     While the Court Need Not Consider Them, the *Winter* Factors Also Do Not Support Issuance of a TRO**

Because the Court lacks jurisdiction to issue the relief Plaintiffs seek, it need not even address the *Winter* factors. Given that clear jurisdictional defect and the short briefing schedule on this motion, Defendants will address the *Winter* factors only briefly here (but will be prepared to fully brief the *Winter* factors at the preliminary injunction stage, if necessary).

**A.  Plaintiffs Are Unlikely To Succeed on the Merits of Their Claims**

To justify a TRO, Plaintiffs must show likelihood of success on the merits of their claims—but they cannot. Their application is jurisdictionally deficient, unsupported by evidence, and lacks a cognizable legal basis under the APA.

First, Plaintiffs are unlikely to succeed on the merits for the simple fact that, as set out above, they cannot meet their burden of showing this Court's jurisdiction to issue the relief they seek.

Second, Plaintiffs' motion (as well as the claims pled in their Complaint) relies on ED's supposed use of the "Directive procedure" that the Court enjoined in December 2025. Dkt. 10 at 1-2, 13; *see* Dkt. 1, ¶ 10 n.1 (alleging without evidence that the Directives "likely" underlie the so-called "Washington Plan"). Plaintiffs spend several pages asserting numerous procedural and regulatory problems with the enjoined Directives, and then build their legal arguments on that basis. Dkt. 10 at 4-7, 15-16, 19-24. But this is mere bootstrapping. The narrative that ED continues to use the enjoined Directives is not just speculative—it is wrong. Plaintiffs present no evidence whatsoever to rebut ED's sworn statements that it is *not* using the Directive procedure, and has not done so for more than a year. *See Washington v. ED I*, Dkt. 447, ¶¶ 4-5. (Similarly, Plaintiffs' proposed order enjoining ED from "implementing or enforcing through any means the February

Directive," Dkt. 10-1 at 1, is both bizarre and moot: the Court already granted that relief, in *Washington v. ED I*.)

Third, Plaintiffs have not shown they are likely to succeed on the merits of their APA claims, because they cannot show that what they deem the "Washington Plan" is a "final agency action" under the meaning of the APA. To do so, they would have to show that the "Washington Plan": (1) "mark[s] the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted). Plaintiffs try to thread the needle by pointing out that the Court found ED's February and June Directives to be final agency actions. Dkt. 10 at 12-13. But, again, that is irrelevant, because the supposed "Washington Plan" to terminate Plaintiffs' grants "using the same unpublished priorities" set out in those Directives (*id.* at 1-2) does not exist. Indeed, the only evidence Plaintiffs cite for the existence of such a plan is Defendants' motion for clarification, *see id.* at 8—but that motion specifically explained that ED is *not* using those enjoined priorities. *Washington v. ED I*, Dkt. 437 at 5; *see id.* Dkt. 447, ¶¶ 4-5. Moreover, as Plaintiffs themselves quote, ED is still "considering" whether to terminate "some or all" grants. Dkt 10 at 13. An invented "plan" and tentative decisions are, by definition, not final agency actions. Plaintiffs ask this Court to issue injunctive relief based on a mirage.

**B. The Remaining *Winter* Factors Also Favor Defendants**

As to the second *Winter* Factor, any analysis of irreparable harm here in fact favors Defendants. As the Supreme Court pointed out in *California*, ED is unlikely to recover any grant funds once they are disbursed, whereas if Plaintiffs ultimately prevail, "they can recover any wrongfully withheld funds through suit in an appropriate forum." 604 U.S. at 652. And Plaintiffs have no cognizable interest in receiving federal funds to which they are not legally entitled.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 10

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Furthermore, Plaintiffs' own delay here "vitiates much of the force of their allegations of irreparable harm." *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977). Plaintiffs have known for more than a month that ED was planning a series of grant terminations beginning on July 31, yet waited until the last minute to file this motion.

Lastly, the final two *Winter* factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. And for all the reasons set out above, the public interest and balance of equities here do not favor issuance of a TRO.

**III.    If the Court Grants Emergency Relief, It Should Require Plaintiffs To Post a Bond**

Under Federal Rule of Civil Procedure 65(c), courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." If the Court is inclined to issue a TRO, Defendants respectfully request that it require Plaintiffs to post a bond sufficient to cover the funds ED would be required to disburse, so as to ameliorate the irreparable harm that would otherwise be caused to the government.

**CONCLUSION**

Because the jurisdictional defects are clear, Defendants request this Court deny Plaintiffs' application for a TRO and transfer this case to the Court of Federal Claims.

//

//

//

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 11

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

DATED this 17th day of July, 2026.

Respectfully submitted,

*s/ Sarah Louise Bishop*
SARAH LOUISE BISHOP, NY No. 5256359
Assistant United States Attorney
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4063
Fax:     206-553-4067
Email: sarah.bishop@usdoj.gov

*Attorney for Defendants*

I certify that this memorandum contains 3,416 words, in compliance with the Local Civil Rules.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[Case No. 2:26-cv-02409-KKE] - 12

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970