The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

STATE OF WASHINGTON, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

Defendants.

NO. 2:26-cv-02409-KKE

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER

NOTED ON MOTION CALENDAR:
JULY 24, 2026, 10:00 A.M.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 2

    A.  The Tucker Act Does Not Deprive this Court of Jurisdiction ................................. 2

        1.  This Court has jurisdiction under *NIH* .......................................................... 2

        2.  The *Megapulse* test affirms this Court's jurisdiction ....................................... 3

            a.  Plaintiffs' rights do not sound in contract.................................................... 4

            b.  Plaintiffs do not seek contractual remedies ................................................. 6

    B.  The Directives and the *Washington* Plan Are Subject to this Court's Review Under the APA ................................................................................................... 7

    C.  Defendants Concede that Plaintiff States Would Be Irreparably Harmed Without an Injunction ................................................................................... 11

III.  CONCLUSION ................................................................................................ 13

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I. INTRODUCTION

Once again, Defendants resort to meritless jurisdictional attacks because they cannot defend the lawfulness of their actions. Indeed, a court recently confirmed that "2 C.F.R. § 200.340(a)(4)… do[es] not allow terminations of awards based on new program goals or agency priorities that an agency identifies after granting the award." *New Jersey v. OMB*, No. 1:25-cv-11816-IT, 2026 WL 2069832, at *17 (D. Mass. July 17, 2026). And the Department office that administers Program grants recently admitted that "no GEPA grants had been terminated prior to February 2025"—confirming Defendants have impermissibly "create[d] *de facto* a new regulation" through their new and unlawful interpretation that purportedly provides unfettered discretion to terminate. *In re Cleveland State University*, No. 25-12-GT, 2025 WL 4740230, at *9 (ED. O.H.A. May 15, 2026); *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019).

This Court clearly has jurisdiction. The Complaint makes clear that Plaintiffs challenge the Directives and the *Washington* Plan, not individual grant terminations, putting this case squarely within the sort of APA challenge Justice Barrett contemplated in *NIH*. The *Megapulse* test confirms this result: Plaintiffs' rights arise from regulations, statutes, and the U.S. Constitution, not contracts, and Plaintiffs seek declaratory and injunctive relief, not monetary damages. Indeed, Plaintiffs seek prospective relief to enjoin Defendants from making funding decisions using an unlawful process, not retrospective relief to recover money owed under already-terminated grants. And Defendants' claim that no *Washington* Plan exists is undercut by their concession that the February and June Directives are final agency actions and their statements repeatedly asserting their "concrete" plan to terminate "some or all" of the Protected Grants beginning on July 31, 2026.

Defendants do not dispute that it would be unlawful to apply the Directives and the *Washington* Plan to review and terminate Protected Grants or that Plaintiffs will suffer irreparable injury if the Court does not enjoin Defendants' actions. The Court should enter a temporary restraining order.

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## II.    ARGUMENT

### A.    The Tucker Act Does Not Deprive this Court of Jurisdiction

Defendants argue as if all they need to do to divest this Court of jurisdiction is say the word "termination." According to them, the Court has no power to prevent unlawful terminations from happening regardless of the prospective nature of relief sought and even if Plaintiffs' claims have nothing to do with contractual rights. *Contra United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (applying *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). But what's at issue here is internal agency guidance—not individualized grant decisions that would require this Court to construe grant terms or conditions. The Supreme Court's recent precedent and the longstanding *Megapulse* test affirm this Court's jurisdiction.

### 1.    This Court has jurisdiction under *NIH*

The APA provides an avenue to challenge "internal agency guidance." *NIH v. Am. Public Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring). "That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded…upon' contract that only the [Court of Federal Claims (CFC)] can hear." *Id.* (quoting 28 U.S.C. § 1491(a)(1)). In *NIH*, the challenged directives changed NIH funding priorities and prohibited funding grants not aligned with these new priorities. *Id*. Here, the Tucker Act does not thwart this Court's jurisdiction because Plaintiff States similarly challenge internal agency policies. *See* Dkt. #1 ¶¶ 103-06 (describing final agency actions). And as in *NIH*, it does not matter that these policies have to do with grants and may inform grant termination decisions. *NIH*, 145 S. Ct. at 2661.

Despite being on all fours with Justice Barrett's controlling concurrence in *NIH*, Defendants spend the bulk of their response briefing arguing otherwise. Dkt. #36 at 4-8. They grossly mischaracterize *NIH*, *California*, and *Thakur* as seeking orders preventing the federal government from terminating grants. *Id.* at 5. Not so. These cases involved terminations that had already occurred. *NIH*, 145 S. Ct. at 2661; *U.S. Dep't of Educ. v. California*, 604 U.S. 650, 655

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

(2025); *Thakur v. Trump*, 163 F.4th 1198, 1201 (9th Cir. 2025). And as a result, the district court ordered vacatur or reinstatement of the already-terminated grants as relief. *See NIH*, 145 S. Ct. at 2661; *California*, 604 U.S. at 650; *Thakur*, 163 F.4th at 1201. The Supreme Court and the Ninth Circuit held that district courts do not have jurisdiction to order this particular relief, because it functionally orders the government to pay money damages, and only the CFC had jurisdiction to do that. *NIH*, 145 S. Ct. at 2658; *California*, 604 U.S. at 651; *Thakur*, 163 F.4th at 1204.

In contrast, Plaintiffs seek an injunction preventing the application of policies setting changed priorities that may inform grant terminations that haven't yet occurred. Challenges to such policies have no place in the CFC but are instead the bread and butter of APA litigation. *See NIH*, 145 S. Ct. at 2661; *Washington v. DHS*, No. 2:25-cv-01401-BJR, 2026 WL 1469538 at *6 (W.D. Wash. May 26, 2026) (holding challenge to "[t]ermination [p]olicy" was properly before district court); *City of Chicago v. DHS*, 815 F. Supp. 3d 727, 747 (N.D. Ill. 2025) ("[E]njoining the government from relying on its stated reasons to withhold payment would be exactly the type of relief that the Supreme Court affirmed in *Bowen*" (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)); *Illinois v. Vought*, 820 F. Supp. 3d 727, 731 (N.D. Ill. 2026) (concluding "final internal guidance articulating a basis to implement grant termination" was "reviewable under the APA").

### 2.   The *Megapulse* test affirms this Court's jurisdiction

The Ninth Circuit applies the *Megapulse* test to determine whether a case is essentially a contract dispute that belongs in the CFC, by looking at "(1) 'the source of the rights upon which the plaintiff bases its claims' and (2) 'the type of relief sought (or appropriate).'" *United Aeronautical Corp.*, 80 F.4th at 1026 (quoting *Megapulse*, 672 F.2d at 968). Courts review the complaint when making this determination. *Id.*

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

### a.      Plaintiffs' rights do not sound in contract

For the first *Megapulse* prong, the source of Plaintiffs' rights are regulatory, statutory, and constitutional—not contractual. Plaintiffs allege Defendants violated the APA, the termination regulation, General Education Provisions Act (GEPA) rulemaking requirements and procedural protections, civil rights statutory procedural protections, and the Constitution. Dkt. #1 ¶¶ 114-200. This has nothing to do with the terms of any grant, and everything to do with Defendants' failure to follow regulatory, statutory, and constitutional law.

Instead of basing their analysis on the Complaint, Defendants eschew Plaintiffs' allegations altogether. They ask the Court to consider a hypothetical: what if Plaintiffs' grants had never existed? Because Plaintiffs would not have filed their lawsuit without these grants, Defendants ask the Court to conclude that the grants are the true source of Plaintiffs' rights. Dkt. #36 at 6. None of this "but for" thought exercise is backed by precedent, and in fact was considered and rejected by Defendants' own authority. *See id.* at 5 (citing *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099 (D.C. Cir. 2022)). In *Crowley*, the D.C. Circuit considered and rejected the "but for" test, recognizing that it contravened *Megapulse*'s express rejection of the "argument that the mere existence of such contract-related issues…convert[s] [the] action to one based on the contract." 38 F.4th at 1110 (quoting *Megapulse*, 672 F.2d at 969); *accord Ass'n of Am. Universities v. DOD*, 806 F. Supp. 3d 79, 93-95 (D. Mass. 2025) (rejecting same argument and explaining, "[T]he fundamental problem with Defendants' argument is that it wrongly assumes that any claim between contracting parties arises in contract. As a matter of basic, common-law principles, this is obviously wrong."). This Court should reach the same conclusion and reject the "but for" test proposed by Defendants.

Defendants also ask that the Court override Plaintiffs' allegations, again citing cases involving orders vacating prior termination decisions. Dkt. #36 at 6-7. As explained above, this case involves internal agency guidance, not a breach of contract, and as such, this Court should decline Defendants' invitation to contravene *NIH*.

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Even if this lawsuit were about individual grant terminations, rather than the policy that decides which Protected Grants to terminate, Defendants' categorical assertion that "the [CFC] has exclusive jurisdiction to adjudicate challenges to federal grant terminations" is, as a matter of law, wrong.[1] Dkt. #36 at 4. Plaintiffs allege the Directives and the *Washington* Plan violate the APA because, among other things, they direct Department staff to terminate Protected Grants without first complying with procedural protections under GEPA and federal civil rights law. *See* Dkt. #1 ¶¶ 156-83. As Plaintiffs have explained, the Programs are subject to GEPA's procedural protections, entitling Protected Grantees to notice, an administrative hearing, and judicial review by a federal circuit court—not the CFC—when the Department withholds funding for a particular grant. *See* Dkt. #10 at 21-22; 20 U.S.C. §§ 1234d, 1234g, 1234i(2). Congress mandates similar procedural protections, including an attempt to secure voluntary compliance, when a federal agency seeks to terminate funding based on a grantee's alleged non-compliance with federal civil rights laws. *See* 42 U.S.C. §§ 2000d-1, 2000d-2; 20 U.S.C. §§ 1232i(b), 1682, 1683. The Department's regulations implement these statutes. *See, e.g.*, 34 C.F.R. §§ 81.1-.45 (GEPA), §§ 100.1-13 & part 101 (Title VI), § 106.81 (Title IX). Defendants cannot meaningfully dispute that the source of these APA claims is statutory and regulatory, not contractual. *See, e.g.*, *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 970 (N.D. Cal. 2025), *appeal dismissed*, No. 26-263, 2026 WL 1049175 (9th Cir. Feb. 11, 2026) (concluding Tucker Act did not "apply to the claim that [grant funding] suspensions violated the requirements of Title VI and IX"); *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 106 (D. Mass. 2025) (distinguishing "APA claims based on… violations of Title VI… from the more contract-based claims asserted in

---

[1] Nor have Defendants shown the grants at issue provide a source of "contractual" rights, as understood by *Megapulse*. *See Pacito v. Trump*, 169 F.4th 895, 925-27 (9th Cir. 2026) (holding that certain cooperative agreements were not contracts because they did not confer a "direct benefit" to the federal government); *see also, e.g.*, *Urb. Sustainability Dirs. Network v. USDA*, No. 1:25-cv-01775-BAH, 2025 WL 2374528, at *16 (D.D.C. Aug. 14, 2025); *Maine v. NOAA*, No. 1:25-cv-00324-SDN, 2026 WL 1005094, at *7 (D. Me. Apr. 14, 2026); *Wahba v. New York University*, 492 F.2d 96, 100 (2d Cir. 1974).

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*California* and [*NIH*]"); *Chicago Transit Auth. v. U.S. Dep't of Transportation*, 824 F. Supp. 3d 677, 682 (N.D. Ill. 2026) ("Multiple courts have held that the Tucker Act is not 'relevant' where a challenge to a funding decision is brought under Title VI.") (collecting district court cases). Likewise, Plaintiffs' other statutory claims, and their constitutional and *ultra vires* claims, plainly do not arise from contract. *See, e.g.*, *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1138-39 (9th Cir. 2025) (*Washington III*) (Tucker Act did not apply to claims based on governing regulation, notice-and-comment rulemaking obligation under GEPA, and reasoned decision-making obligation under APA); *California v. Wright*, No. 3:26-cv-01417-RFL, 2026 WL 1915590, at *9-11 (N.D. Cal. July 2, 2026) (*Wright)* (noting "[t]he sovereign immunity analysis is fundamentally different for constitutional and *ultra vires* claims" and concluding these claims belonged in district court).

Because the source of Plaintiffs' rights does not sound in contract, the Tucker Act does not apply here.

### b.    Plaintiffs do not seek contractual remedies

For the second *Megapulse* prong, Plaintiffs' remedies are not at all contractual in nature. Plaintiffs seek prospective injunctive and declaratory relief. Dkt. #1 § VI. Defendants concede this, stating, "Plaintiffs now seek… an order *preventing* Defendants from terminating their grants." Dkt. # 36 at 5 (emphasis added). An order *preventing* unlawful terminations is not an order enforcing an obligation for the government to pay money past due. This prospective relief may only be obtained in district court and is not contractual in nature. *See, e.g.*, *Washington III*, 161 F.4th at 1140 (holding that Tucker Act did not divest this Court of jurisdiction because Plaintiffs seek "purely prospective relief"); *see also New Jersey*, 2026 WL 2069832 at *6 (holding district court had jurisdiction because plaintiffs "do not challenge past terminations," but rather, "future terminations"); *Wright*, 2026 WL 1915590, at *6 (noting federal agency's concession that injunctive relief to *prevent* re-termination of cooperative agreements must be

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER NO. 2:26-cv-02409-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

sought in district court). Where there will be no court ordering the government to pay up, the district court has jurisdiction to adjudicate Plaintiffs' APA claims.

And without contractual claims, this Court should retain Plaintiffs' constitutional and *ultra vires* claims as well. *Contra* Dkt. #36 at 7. On this point, Defendants' sole authority, *Tucson Airport Authority v. General Dynamics Corporation*, is easily distinguishable, as Plaintiff States' claims do not arise from any grant provisions. *Cf.* 136 F.3d 641, 646 (9th Cir. 1998) (Tucker Act applied because plaintiff's claims were "based solely on [a contractual] provision"); *Wright*, 2026 WL 1915590, at *10 (discussing *Tucson*).

Defendants cannot surmount precedent, so they again try to change the facts. They rewrite Plaintiffs' complaint, suggesting that it seeks an order for the federal government to pay money due on a contract and perform its contract. Dkt. #36 at 7-8. But that is not Plaintiffs' case. In fact, the Department has affirmed that grantees "may use carryover funds for previously approved grant activities during your full 12-month continuation period," and that grantees who voluntary terminate their grants may "liquidat[e] funds expended on approved activities through the end of the project and budget period." Dkt. #13-4 at 2-3; *see also, e.g.*, *Pacito*, 169 F.4th at 929 n.15 ("Plaintiffs are not seeking reimbursement here; the termination notices expressly permitted recipients to make reimbursement requests for previously incurred costs."). Defendants should not be allowed to reshape Plaintiff States' complaint through a "mystical metamorphosis" to deprive this Court of jurisdiction. *Megapulse*, 672 F.2d at 968; *see also United Aeronautical Corp.*, 80 F.4th at 1026.

This Court would not violate the Tucker Act by providing Plaintiffs with prospective relief and enjoining the Directives and the *Washington* Plan as applied to Protected Grants.

**B.    The Directives and the *Washington* Plan Are Subject to this Court's Review Under the APA**

Defendants do not deny that the Directives are final agency actions subject to review under the APA. Dkt. #36 at 9-10. Indeed, they concede the Court already determined the

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

February Directive was a final agency action and enjoined it in *Washington*. *Id*. at 9-10. And they do not dispute the June Directive is a final agency action, which concedes this argument. *See In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1043 (W.D. Wash. 2025) (citing Local Rules W.D. Wash. LCR 7(b)(2)). Rather, Defendants deny that they continue to use the Directive procedure (misconstruing that procedure as solely the February Directive) and deny that the *Washington* Plan exists at all.

Instead of separately addressing the February and June Directives, Defendants assert that the Department "is *not* using the Directive procedure, and has not done so for more than a year." Dkt. #36 at 9. But this argument improperly conflates the *form* of the February Directive with the *substance* of what the Court enjoined as the Directive procedure. The February and June Directives both direct Department staff to apply the same new unpublished priorities of "merit, fairness, and excellence in education." Dkt. ##11-3 at 2, 11-4 at 2. And although Defendants memorialized the June Directive after the April discontinuances, it clearly played a role in Defendants' unlawful denials of reconsideration in August and September 2025, which use the same disjunctive list—verbatim—that appears in the June Directive (as well as the April 2025 discontinuance letters). *Compare* Dkt. #11-4 at 2 (June Directive), *with Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d 1222, 1232 (W.D. Wash. 2025) (*Washington II*) (quoting discontinuance letter) *and Washington v. U.S. Dep't of Educ.*, No. 2:25-cv-01228-KKE (W.D. Wash.) (*Washington*), Dkt. #237-1 at 2 (reconsideration denial). Indeed, by directing Department personnel to apply the unpublished priorities from the February Directive to discontinue, rather than terminate, grants, the June Directive memorialized the exact Directive procedure that this Court enjoined. *See Washington II*, 813 F. Supp. 3d at 1237 (explaining that Directive procedure applied the February Directive to continuation decisions). The Department cannot write down its enjoined policy on a new piece paper, have a new Department representative sign it, give it a new date, and pretend that the substance of the Court's original injunction no longer applies. *New York v. Trump*, 171 F.4th 1, 16 (1st Cir. 2026) ("The States are challenging the [agency

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

action], not the piece of paper that contained it."). If the February Directive was enjoined, so too was the June Directive.

Regardless, Defendants concede the February and June Directives are final agency actions, and the Court need not engage in Defendants' semantic games to conclude the *Washington* Plan is also final agency action. Defendants create a smokescreen by disclaiming use of the February Directive (which, on its face, directs grant terminations, but was used to unlawfully discontinue Protected Grants) while playing coy about the June Directive (which, on its face, addresses discontinuances, but could apparently lead to "a termination outcome"). *See* Dkt. ##11-3 (February Directive), 11-4 (June Directive); *Washington*, Dkt. #447-1 ¶ 4 (discussing June Directive). But Defendants' obfuscation cannot hide that Defendants plan to apply one or both Directives by unlawfully using unpublished criteria to make termination decisions about Protected Grants (*i.e.*, the *Washington* Plan). The Court need only look to Defendants' recent treatment of other unlawfully discontinued grants for confirmation. *See* Dkt. #10 at 10-11, 24 (discussing terminations of previously discontinued grants in *Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, No. 1:25-cv-03491-TSC (D.D.C.)).

Defendants' assertion that the *Washington* Plan "does not, in fact, exist" flatly contradicts their assertion that their motion for clarification "plainly involves a concrete situation" as well as their June 30 notices to Protected Grantees, informing them that the Department was considering terminating their grants starting July 31, 2026. Dkt. ##36 at 1, 13-4 at 2-3; *Washington*, Dkt. #446 at 3; *see also* Dkt. #10 at 10 (quoting Defendants' representations). As Defendants themselves explain, "The Department has informed the Court that it is planning to terminate some or all of the grants that are affected by its injunction pursuant to 2 C.F.R. § 200.340 on or after July 31, 2026. There is nothing abstract about the circumstances." *Washington*, Dkt. #446 at 3-4. A plan constitutes final agency action. *See Prutehi Litekyan: Save Ritidian v. Dep't of Airforce*, 128 F.4th 1089, 1110 (9th Cir. 2025). This plan does not need to be written down to constitute final agency action. *Washington II*, 813 F. Supp. 3d at 1235-37

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

(holding Directive procedure, although not documented, was final agency action); *Illinois v. Vought*, 820 F.Supp.3d 727, 731-32 (N.D. Ill. 2026) (restraining Targeting Directive despite absence of memorializing document).

And this is not the first time Defendants have claimed, contrary to fact, that a Department policy to defund Protected Grants did not exist. In *Washington*, Defendants omitted the June Directive from the Certified Administrative Record—then repeatedly used that omission against Plaintiffs during summary judgment briefing. *See, e.g.*, *Washington*, Dkt. #256 at 15 (denouncing Plaintiffs' claimed change in continuation policy as "a convenient device… to use arguments of counsel as a substitute for the existence of any evidence in the record"); *id*. at 16 (distinguishing Supreme Court authority because "Plaintiffs point to nothing in the record evidencing a change of policy that is remotely akin to the formal order under review" in that case). *Compare also, e.g.*, *id.* at 17-18 (denying Plaintiffs' claim that Defendants discontinued grants based on "statements included in their applications in response to [the GEPA Equity Directive]" because "nothing put forward by the States establishes that any grants were non-continued for this reason"), *with* Dkt. #11-4 at 3 (showing June Directive instructed Department staff to "take into account… the approved grant application (inclusive of the GEPA 427 statement)").

The Department had every reason to know these representations were factually inaccurate at the time they were made. Upon issuance, the Department purportedly stopped using the February Directive and trained "[a]ll program offices involved in grant-making… on implementation of the June 5, 2025, Memorandum between June through July 2025." Chung Suppl. Decl. Ex. A, ¶¶ 2, 4-5. Based on this sworn testimony, Department staff would unquestionably have considered the June Directive when they denied grantees' reconsideration requests in August and September 2025. But although Defendants included the February Directive and reconsideration denials when they produced the Certified Administrative Record (CAR) in November 2025, the attorneys who prepared and certified the CAR left the June

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Directive out. *See Washington*, Dkt. ##202 at 1 (certification), 208 at 13 n.2 (cataloguing CAR). Until last month, Plaintiffs had no way to know the June Directive even existed. The only reason Defendants have now revealed the June Directive is so they can claim they have a new policy (*i.e.*, a different piece of paper than the February Directive) that the Court did not technically enjoin—even though it is, in substance, precisely the Directive procedure that the Court held unlawful. *See Washington*, Dkt. #446 at 3 (citing newly provided declaration that attaches the June Directive).

Defendants' dissimulation was not persuasive before, and it is not persuasive now. The *Washington* Plan exists, and it is final agency action that is unlawful and should be enjoined.

## C.   Defendants Concede that Plaintiff States Would Be Irreparably Harmed Without an Injunction

Defendants do not dispute that Plaintiff States will suffer irreparable injury if Defendants move forward with their planned terminations of Protected Grants. *See* Dkt. #36 at 10-11. They thus concede this point. *See In re Stanley Tumbler Litig.*, 764 F. Supp. 3d at 1043.

Defendants' only response is that they might need to spend money they may not be able to recover. Dkt. #36 at 10-11. But this does not prevent the Court from issuing a TRO. *See Thakur v. Trump*, 176 F.4th 1187, 1205 (9th Cir. 2026) (holding district court did not abuse its discretion by issuing injunction after balancing defendants' asserted harm from lost disbursed funds against plaintiffs' irreparable injury). That is especially true here, where Defendants make no defense—whatsoever—that their planned terminations are lawful. *See generally* Dkt. #36. Neither do they make any showing that the immediate withholding of funds would be justified under GEPA. *See* 20 U.S.C. § 1234d(b) ("Before withholding payments…"), § 1234g(a), (b); 34 C.F.R. § 75.903(c) (termination may only become effective after relevant administrative appeals have concluded). It is not even clear what money a TRO would force the Department to disburse, as the Department has told grantees they may continue to use carryover funds, and even

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

grantees who voluntary terminate their grants may "liquidat[e] funds expended on approved activities through the end of the project and budget period." Dkt. #13-4 at 2-3.

Even if Defendants could somehow prevail on their jurisdictional claims (they cannot), they concede they have no lawful basis to terminate the Protected Grantees and therefore suffer no harm from Plaintiffs' requested relief. And even if it is the case that a TRO might somehow cause Defendants to spend money it otherwise wouldn't and has no way of recouping (which Defendants have not shown), the threat of harm to Plaintiff States' mental healthcare infrastructure in public schools (let alone students and staff) far outweighs the Federal Government's interest in ending these grants. *See Jaffee v. Redmond*, 518 U.S. 1, 11 (1996) ("The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance."); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) (promoting the health and safety of students constitutes a public interest). Indeed, "the question of the public interest is inseparable from the issues relating to the relative hardship suffered by the litigants." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983); *see also id*. ("The [federal] government must be concerned not just with the public fisc but also with the public weal."). Moreover, "the public interest is served by requiring agencies to comply with the APA" and the Constitution. *Washington II*, 813 F. Supp. 3d at 1247; *Thakur*, 176 F.4th at 1205.

Further, Plaintiffs request an injunction preventing the application of an unlawful termination policy to the Protected Grants, not an order to pay money as discussed above. Indeed, Defendants have only obligated funds through the proposed termination date and have not shown a TRO would require them to disburse any funds "to which [they believe Plaintiffs] are not legally entitled." Dkt. #36 at 10. They have also repeatedly asserted their ability to recover funds under section 452 of GEPA, 20 U.S.C. § 1234a. Dkt. ##11-4 at 2, 13-2 at 5. For similar reasons, the Court should deny Defendants' cursory request for a bond under Rule 65(c). *See Washington v. U.S. Dep't of Educ.*, 807 F. Supp. 3d 1275, 1294 (W.D. Wash. 2025).

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**III.    CONCLUSION**

The Court should enjoin Defendants from carrying out the Directives and the *Washington Plan* as to the Protected Grants.


DATED this 20th day of July 2026.

I certify that this memorandum contains 4198 words in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Jennifer K. Chung*
JENNIFER K. CHUNG, WSBA #51583
ELLEN RANGE, WSBA #51334
Assistant Attorneys General
Complex Litigation Division
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
Deputy Solicitors General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Jennifer.Chung@atg.wa.gov
Ellen.Range@atg.wa.gov
William McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov

*Attorneys for State of Washington*

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

ROB BONTA
Attorney General of California

*/s/ Crystal Adams*
CRYSTAL ADAMS**
Deputy Attorney General
NELI PALMA**
Senior Assistant Attorney General
KATHLEEN BOERGERS**
Supervising Deputy Attorney General
KATHERINE MILTON**
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
916-210-7522
Crystal.Adams@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Katherine.Milton@doj.ca.gov

*Attorneys for State of California*

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Sarah H. Weiss*
SARAH H. WEISS**
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
Sarah.Weiss@coag.gov

*Attorney for State of Colorado*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Andrew Ammirati*
ANDREW AMMIRATI**
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov

*Attorney for State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Ian R. Liston*
IAN R. LISTON*
Director of Impact Litigation
VANESSA L. KASSAB**
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov
Vanessa.Kassab@delaware.gov

*Attorneys for the State of Delaware*

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

KWAME RAOUL
Attorney General of Illinois

/s/ Emily Hirsch
EMILY HIRSCH*
Assistant Attorney General
ALEEZA STRUBEL*
Complex Litigation Counsel
Office of the Illinois Attorney General
115 S. LaSalle St
Chicago, IL 60603
773-835-0148
Aleeza.Strubel@ilag.gov
Emily.Hirsch@ilag.gov

Attorneys for State of Illinois

AARON M. FREY
Attorney General of Maine

/s/ Sarah A. Forster
SARAH A. FORSTER*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
Sarah.Forster@maine.gov

Attorney for the State of Maine

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Michael Drezner
MICHAEL DREZNER**
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6959
Mdrezner@oag.state.md.us

Attorney for State of Maryland

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

/s/ Adelaide Pagano
ADELAIDE PAGANO**
Assistant Attorney General
Office of the Massachusetts Attorney General
100 Cambridge Street
Boston, MA 02108
617-963-2122
Adelaide.Pagano@mass.gov

Counsel for the Commonwealth of
Massachusetts

DANA NESSEL
Attorney General of Michigan

/s/ Neil Giovanatti
NEIL GIOVANATTI*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov

Attorney for the State of Michigan

RAÚL TORREZ
Attorney General of New Mexico

/s/ Aletheia V.P. Allen
ALETHEIA V.P. ALLEN*
Solicitor General
LAWRENCE MARCUS*
Assistant Solicitor General
New Mexico Department of Justice
201 Third St. NW, Suite 300
Albuquerque, NM 87102
505-527-2776
AAllen@nmdoj.gov
LMarcus@nmdoj.gov

Attorneys for State of New Mexico

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

LETITIA JAMES
Attorney General of New York

*/s/ Rabia Muqaddam*
RABIA MUQADDAM *
Chief Counsel for Federal Initiatives
MARK LADOV**
Special Counsel
28 Liberty Street
New York, NY 10005
212-416-8240
Rabia.Muqaddam@ag.ny.gov
Mark.Ladov@ag.ny.gov

*Attorneys for the State of New York*

DAN RAYFIELD
Attorney General of Oregon

*/s/ Leanne Hartmann*
LEANNE HARTMANN**
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
971-673-1880
Leanne.Hartmann@doj.oregon.gov

*Attorney for State of Oregon*

PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Kyla Duffy*
KYLA DUFFY*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
Kduffy@riag.ri.gov

*Attorney for State of Rhode Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Frances Reynolds Colbert*
FRANCES REYNOLDS COLBERT**
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-266-9226
Frances.Colbert@wisdoj.gov

*Attorney for State of Wisconsin*

*Admitted pro hac vice
**Pro hac vice application forthcoming

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:26-cv-02409-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744