UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>Plaintiff(s),<br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, et al.,<br><br>Defendant(s). | CASE NO. C26-2409-KKE<br><br>ORDER DENYING DEFENDANTS' MOTION TO STAY |

A group of 15 states ("Plaintiff States") filed this action challenging the Defendant United States Department of Education's plan to terminate a group of grants ("the Grants") that provide mental health services for public-school students in their states no earlier than July 31, 2026. Dkt. No. 1. Plaintiff States also filed a motion for temporary restraining order ("TRO") to enjoin the Department from unlawfully terminating the Grants for allegedly unlawful reasons. Dkt. Nos. 10, 22.

After full briefing and oral argument, the Court granted Plaintiff States' TRO motion, temporarily prohibiting the Department and its secretary (collectively referred to in this order as "the Government") from terminating the Grants without providing certain procedural protections or terminating the Grants by evaluating them for alignment with new priorities that did not exist

at the time the Grantee applied for the Grant. Dkt. No. 50 at 14.[1] The Court initially set the TRO to expire in 28 days and set a preliminary injunction hearing for that day (August 24, 2026), but when Plaintiff States requested expedited discovery and sought to brief their motion on an expedited basis, the Government objected. Dkt. No. 57-1. The Court accommodated the Government's request for a standard time period in which to file an opposition, which required continuing the preliminary injunction hearing to September 8, 2026, to allow the Court sufficient time to resolve the expedited discovery motion before the preliminary injunction hearing. Dkt. No. 60. The Court extended the TRO's expiration until the preliminary injunction is resolved in order "[t]o provide sufficient time to brief both the motion for expedited discovery and the preliminary injunction motion[.]" *Id*. at 3; *see also* Dkt. No. 69 at 2–3 (reiterating this rationale when setting briefing schedule on the preliminary injunction motion).

The Government appealed the Court's TRO order on August 10, 2026, and filed a motion to stay the TRO order and the order extending the TRO. Dkt. No. 66. This motion was briefed on an expedited basis (Dkt. No. 69 at 1 n.1) and is now ripe; the Government has also requested that the Ninth Circuit stay this Court's orders pending appeal. Dkt. No. 80 at 1 n.1.

"A stay [pending appeal] is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion," based on the consideration of four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

[1] This order refers to docket entries by their CM/ECF page number.

> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. (quoting *Nken*, 556 U.S. at 433–34). The first two *Nken* factors "are the most critical." *Nken*, 556 U.S. at 434. If the stay applicant fails to make a threshold showing of irreparable harm, "then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011).

Here, as to the first *Nken* factor, the Government has not made a strong showing that it is likely to succeed on the merits.[2] The Government's opposition to Plaintiff States' TRO motion was not directed at the merits, but raised jurisdictional arguments that the Court has had occasion to address both in this lawsuit and in the companion case, *State of Washington v. U.S. Department of Education*, No. C25-1228-KKE (W.D. Wash. 2025) ("*Washington I*"). In both cases, the Court has rejected the Government's jurisdictional arguments, finding that Plaintiff States' claims do not fall within the ambit of the Tucker Act. The Ninth Circuit agreed with that reasoning when denying the Government's motion for a stay pending appeal in the companion case. *Washington I*, Dkt. No. 265. The Government has not offered new arguments in its stay motion that persuade the Court to revisit its assessment of the Tucker Act arguments in this case. *See* Dkt. No. 50 at 7–9.

The Government also opposed Plaintiff States' TRO motion on the grounds that no final agency action had occurred, but the Court found this argument to be inconsistent with the Government's litigation position in *Washington* I—where it described a plan to terminate Grants for reasons the Court found to be unlawful, yet denied in this case that any such plan existed. Dkt. No. 50 at 10–12 & n.1. The Court also found the Government's argument to be implausible, in that its notices to Grantees and the Court described a termination plan, the contours of which were

---

[2] Plaintiff States contend that the Ninth Circuit lacks jurisdiction over an appeal of a TRO, which is one threshold reason that the Government is not likely to succeed on the merits. Dkt. No. 75 at 4. The Government has argued to the Ninth Circuit that the Court's TRO is functionally a preliminary injunction, and the Court need not address that argument here.

clear enough from those notices to satisfy Plaintiff States' burden at the TRO stage to show a final agency action. *Id*. Although the Government's stay motion characterizes its termination plans as "purely internal discussions within the Department about the possibility of moving forward with grant terminations informed by the Court's guidance" (Dkt. No. 66 at 5), this characterization overlooks that notices were sent to Grantees warning them of impending terminations that would occur without the required procedural protections, and for reasons the Court has found unlawful in this case as well as *Washington I*. *See* Dkt. No. 13-4; *Washington I*, Dkt. No. 437 at 2, Dkt. No. 445. The Court anticipates that expedited discovery may shed further light on the Government's actions or directives, but again, the Government's motion to stay has not offered new arguments that persuade the Court to revisit its assessment of the availability of judicial review.

The Government's motion to stay also argues that the Court should assume that the Department will lawfully terminate the Grants. Dkt. No. 66 at 5. At the outset, the Court notes that lawful terminations have always been and continue to be an option available to the Government. Neither the permanent injunction in *Washington I* nor the TRO entered in this case prohibits lawful terminations. Yet the Government's Grant discontinuations were found *un*lawful in *Washington I*, and the planned terminations addressed in this case appear to be similarly unlawful. The Government's stay briefing does not grapple with the Court's discussion of why the terminations would be unlawful if they fail to provide procedural protections or test the Grants against new priorities that did not exist at the time the Grantee applied for the Grant. *See* Dkt. No. 50 at 10–12 n.1. The Government has not explained why the Court should assume that the Grants will be lawfully terminated when the only information currently in the record[3] indicates the

---

[3] The Government recently filed a declaration in connection with other briefing stating that if "the Department is able to proceed in making termination decisions regarding [Grants], the Department intends to follow all applicable legal procedures required of it[.]" Dkt. No. 88 ¶ 8. This declaration does not address the language in the Government's notices to Grantees and court filings that leads the Court to conclude otherwise. In any event, terminations that comply with all applicable legal procedures have not been prohibited by this Court.

opposite. "Judicial review of agencies is deferential—not naïve." *Sweet v. DeVos*, 495 F. Supp. 3d 835, 846 (N.D. Cal. 2020). For all of these reasons, the Court finds that the Government has not made a "strong showing" of a likelihood of success on the merits.

The Court now considers the second *Nken* factor: whether the Government would suffer irreparable harm without a stay. Attempting to show irreparable harm, the Government argues that the Court's TRO "requir[es] the payment of money that the government may never recover." Dkt. No. 66 at 6. The Government suggests that because the Court has prevented it from terminating the Grants, then it is forced to disburse funds to Grantees that could not be ordered to return the funds if the Government later prevails. *Id*. This argument mischaracterizes the Court's TRO: it prohibits (1) termination of the Grants without providing the required procedural protections, and (2) effectuating terminations by evaluating the Grants for alignment with new priorities that did not exist at the time the Grantee applied for the Grant, for purposes of evaluating whether to withhold funds from the Grantee. Dkt. No. 50 at 14. Again, the Court's TRO does not prohibit the Government from lawfully terminating the Grants.

That the Government must abide by the law in terminating Grants does not impose irreparable harm on the Government. The Government relies on cases where grants were terminated and ordered reinstated to argue that compelling an agency to pay federal funds can constitute irreparable harm. *See* Dkt. No. 80 at 6 (citing *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 604 U.S. 650 (2025); *Thakur v. Trump*, 163 F.4th 1198 (9th Cir. 2025)). But here, the Court has not ordered the Government to pay any federal funds; rather, the Government must do so by virtue of its agreements to fund the Grants through July 31, 2026. Dkt. No. 74-3. Even if the Court stayed enforcement of the TRO, the Government has not shown that it would not be obligated to reimburse Grantees for expenditures incurred before July 31, 2026. *See* Dkt. No. 67 ¶¶ 2–3, Dkt. No. 74-3. Notably, the Government

has apparently not issued funding decisions that extend beyond July 31, 2026 (Dkt. No. 74 ¶¶ 7–8), and thus it is not clear that the Government has disbursed or will disburse additional funds not already allocated while pursuing its appeal. Under these circumstances, the Court finds that the Government has not met its burden to show that it will suffer irreparable harm without a stay pending appeal.

Because the Government has not satisfied the first two *Nken* factors, the Court need not go on to analyze the remaining factors. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) ("We consider the last two [*Nken*] factors if the first two factors are satisfied"). Accordingly, the Court DENIES the Government's motion to stay. Dkt. No. 66.

Dated this 26th day of August, 2026.

Kymberly K. Evanson
United States District Judge