Judge Evanson

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | CASE NO. 2:26-cv-02409-KKE<br><br>**DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

## INTRODUCTION

In this action, Plaintiff States seek an injunction constraining the Department from terminating grants agreement that were the subject of the Court's injunction in *Washington I.* Their claims in support of this request rely solely on speculation that the Department *may* someday terminate these grant agreements by a procedure or on grounds that they *believe* may be unlawful. And the purpose and effect of the injunction they seek is to compel the Department to keep funding these grant agreements indefinitely in derogation of the Department's discretionary authority to choose the method and the means for terminating grant funding.

As the Department's principal memorandum shows, the States' claims run afoul of at least two jurisdictional limitations on this Court. The first, recently reinforced in two cases by the



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Supreme Court and one in our Court of Appeals[1], precludes district courts from exercising jurisdiction over APA claims that seek to enforce a federal agency's obligation to fund grant agreements. Those claims are within the exclusive jurisdiction of the U.S. Court of Federal Claims.

Nothing in the States' opposition overcomes this jurisdictional limitation. Specifically, they point to nothing that truly differentiates their claims from the claims asserted by the plaintiffs in those three cases. And while the States' view of the Department's legal obligations in the context of grant agreement terminations is erroneous, it does not matter for purposes of this motion whether they are correct or not because jurisdiction to provide a remedy for an unlawfully terminated grant agreement is within the exclusive jurisdiction of the U.S. Court of Federal Claims and not in this Court.[2]

The second jurisdictional limitation, also supported by clear authority, precludes this Court from exercising jurisdiction except in the case of a final agency action. It is undisputed that the Department has not terminated any of the subject grant agreements nor cut off funding to any grantee. While the States allege that the Department was putting plans in motion to terminate these agreements, it is undisputed that no involuntary termination of any of the affected grant agreements has occurred to this very day. In other words, if as the States claim, the Department is moving in the direction of terminating these grant agreements, its actions to date have not reached the stage at which there is a final agency action in the form of the termination of a grant agreement. All of the States' efforts to manufacture a final agency action fail in the face of that clear and undisputed fact. Thus, the States' lawsuit amounts to an improper effort to obtain the Court's premature interference in the Department's discretionary performance of its delegated authority *before* any jurisdictional basis for judicial review of the Department's actions has arisen. For both of these reasons, the

---

1 These cases are: *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, __ U.S. __, 145 S. Ct. 2658 (2025) (*NIH*), *Department of Education v. California*, 604 U.S. 650 (2025) (*California*) and *Thakur v. Trump*, 176 F.4th 1187, 1198 (9th Cir. 2026) (*Thakur*).

2 This reply only responds to the States' opposition arguments that are specific to the Department's motion to dismiss for lack of subject matter jurisdiction. The absence of a response to other arguments, made in support of the States' motion for a preliminary injunction, is not a waiver of anything but rather a limitation imposed by the procedural posture of this motion. For the record, the Department opposes and has opposed all of the States' arguments in support of their motion for a preliminary injunction, including all those that go to the merits of their claims, and it has done so fully and "meaningfully" in its opposition to the States' motion for a preliminary injunction. *See* Dkt. # 87, pp. 15, *l.* 19 – p. 21, *l.* 9.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Department's motion should be granted, and this lawsuit should be dismissed.

## ARGUMENT

### I. THE COURT HAS NO JURISDICTION OVER AN APA-BASED CLAIM THAT SEEKS TO ENJOIN THE TERMINATION OF A GRANT AGREEMENT

As established in *NIH*, *California* and *Thakur*, challenges to the grant terminations belong in the U.S. Court of Federal Claims. Nevertheless, the States argue that their claims, which seek an injunction compelling the Department to continue performing the grant agreements at issue here, somehow escape this jurisdictional barrier. None of the States' ever-shifting arguments show that the Court may exercise subject matter jurisdiction here in the face of this overwhelming authority.

Plaintiffs now contend that this Court may ignore *NIH, California* and *Thakur* because they are challenging "a grant termination policy" not "individual grant terminations." Dkt. # 97, p. 16-17. However, in *Thakur v. Trump,* 787 F. Supp. 3d 955 (N.D. Cal. 2025), the plaintiffs' allegations were that the federal agency defendants were all "following the same playbook in terminating grants," *i.e.* a grant termination policy. *Id.* at 968. In issuing the preliminary injunction granting both prospective and retrospective relief, which was ultimately reversed by the Ninth Circuit, the district court relied on the same "change-in-position doctrine" that the States principally rely on here. *Id.* at pp. 981-985; 1006.[3] Likewise, the plaintiffs in *NIH* and *California* also challenged the grant terminations on external policy grounds and not based on any argument that the agency breached some term of their agreements.

The States' assertion that this Court's acknowledgement that the law as determined by *NIH*, *California* and *Thakur* jurisdictionally foreclose their claims would somehow "impermissibly overturn *NIH,*" Dkt # 97, p. 17, is illogical. *NIH* cannot be "overturned" by recognizing that its holding forecloses jurisdiction over grant terminations in this case as it did in that case. In any

3 The Court's preliminary injunction order rests in part on the faulty premise that *Thakur* is distinguishable because the States here are seeking only prospective relief to enjoin the terminations, which the Court says was not the case in *Thakur*. Dkt. # 106, p. 12, *ll.* 3-18. In reaching this conclusion, the Court apparently relied upon an argument previously advanced by the States. *See* Dkt. # 37, pp. 4-5. But as the Department previously demonstrated, the reversed preliminary injunction in *Thakur* clearly granted *both* retrospective and prospective relief to the affected class. *See* Dkt. # 66, p. 3, *l.* 19 – p. 4, *l.* 14 (setting forth relevant aspects of *Thakur* preliminary injunction). Yet, the Court of Appeals reversed the *Thakur* preliminary injunction in its entirety. In light of these facts, even the States have abandoned this argument.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

event, this Court is incapable of overturning a decision of the Supreme Court.

The States' contention that their argument for jurisdiction is somehow consistent with Justice Barrett's concurrence in *NIH* simply cannot be reconciled with her opinion. Justice Barrett recognized that agency guidance that resulted in the termination of grant agreements may in some cases be reviewable in a district court as a separate matter. But her opinion also makes clear that in those cases district courts remain without jurisdiction to adjudicate the legality of the terminations themselves. *NIH,* 145 S.Ct. at 2660-2662 ("And if the CFC has exclusive jurisdiction over the grant terminations . . . the plaintiffs cannot end-run that limit simply by packaging them with a challenge to agency guidance.") (citation omitted).[4] Contrary to the States' argument, Justice Barrett held that a valid APA challenge to an agency guidance document concerning grant terminations must proceed on a separate track from the terminations themselves. *Id.* at 2662 ("[P]laintiffs' challenges to the grant terminations belong in the CFC, and their APA challenges to the guidance belong in district court.") By bootstrapping their demand for an injunction restricting the grant terminations on top of their claims that the "termination plan" and the February and June guidance are unlawful, the States are proposing the very "end-run" that Justice Barrett's opinion proscribes.

The States argue that the form of the injunction that they have proposed somehow permits their APA claims to escape the jurisdictional limitations of the Tucker Act. According to the States, the Department may proceed with the grant terminations if it only follows the law, meaning the States' view of the law. Dkt. # 97, p. 17, *ll.* 14-20. They are incorrect. The injunction at issue in *California* had precisely the same structure and a similar argument was made in support of its legality. *See California*, 604 U.S. at 658-659 (Jackson, J. dissenting). Yet the Court still concluded that the injunction was improperly issued.

This is a correct result because no matter how one parses the States' proposed injunction, at its core it still requires the Department to specifically perform the grant agreements including, importantly, to continue funding the agreements. *See* Dkt. 72-1, p. 1 ¶ a. ("withholding, in whole or in part, payments from Protected Grants"); ¶ b. ("terminating or refusing to grant or continue federal

4 Four other justices who, with Judge Barrett, carried the majority in *NIH* would have granted the Government's motion without Justice Barrett's caveat that the guidance documents might be separately reviewable in a district court.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

funding assistance, including withholding additional funding determinations or continuation decisions"). In other words, the States' proposed injunction requires the Department to specifically perform the grant agreements and prevents the Department from exercising its discretion to terminate the grant agreements except on terms that the States deem lawful. Such an injunction files in the face of the Tucker Act which deprives federal courts of jurisdiction to order federal agencies to specifically perform contractual obligations including those encompassed within grant agreements. The APA retains the United States' sovereign immunity for relief that Congress impliedly precluded elsewhere to "prevent[] plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). The Tucker Act, which allows money damages but "foreclose[s] specific performance of government contracts," *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 n.2 (D.C. Cir. 1985) (*quoting* H.R. Rep. No. 1656, 94th Cong., 2d Sess. 12-13 (1976)), is such a limitation. Plaintiffs' proposed injunction would impose the contractual remedy of specific performance of the grant agreements on the Department and that relief is not within the jurisdiction of a district court to award.

For similar reasons, the States' new argument that the Tucker Act has no application because they are seeking only injunctive relief is plainly wrong. According to Plaintiffs, because "[n]onmonetary disputes concerning grant terminations fall wholly outside the CFC's jurisdiction . . . they are therefore properly heard in this Court under the APA." Dkt. # 97, p. 18, *ll.* 11-15 (citations omitted). Plaintiffs also make no attempt to reconcile this theory with binding precedent; *California*, for example, involved a request for injunctive relief, yet the Court concluded that the case implicated the Tucker Act. Moreover, this argument has repeatedly been rejected by the Ninth Circuit. In *Doe v. Tenet*, 329 F.3d 1135 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005), the Circuit said:

> The fact that the Court of Federal Claims has no power to grant specific enforcement of a contract does not mean that a suit for specific enforcement can be brought in district court. The Tucker Act is a limited waiver of sovereign immunity for contract actions; equitable contract remedies denied to the Court of Federal Claims are not within the waiver and may not be enforced against the United States at all.

*Id.* at 1141-1142 (citation omitted); *and see N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1994) (cleaned up) ("We decline to overrule this Court's very specific holdings that the APA does not waive sovereign immunity for contract claims seeking equitable relief."); *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (claims that are contractually based exclusively fall within the jurisdiction of the Court of Federal Claims "even if the plaintiff formally seeks injunctive relief."). Plaintiffs' contrary reading of *United Aeronautical* is incorrect.[5]

Lastly, the States contend that the General Education Provisions Act ("GEPA") 20 U.S.C. §§ 1221-1235g "displaces" the Tucker Act. Dkt. # 97, pp. 18-19. The States cite no authority in support of this remarkable proposition. The Court's subject matter jurisdiction necessarily depends on a waiver of sovereign immunity. GEPA contains no waiver of sovereign immunity and the only such waiver alleged in the States' Complaint is the APA. Dkt. # 1, ¶ 21.[6] The law is clear that the Tucker Act displaces APA jurisdiction, as it does here. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998) (citing 5 U.S.C. § 702).

In the final analysis, the States' opposition provides no legitimate reason why their claims may proceed in the District Court while the claims in *NIH, California* and *Thakur* were required to proceed in the U.S. Court of Federal Claims. This Court is required to presume that the States' claims to compel specific performance of the grantees' agreements belong in the U.S. Court of Federal Claims unless demonstrated otherwise. *See United Aeronautical*, 80 F.4th at 1029. The

---

5 In a footnote, the States contend that they may circumvent sovereign immunity through the assertion of an *ultra vires* claim. This contention is stated in one sentence. Because this argument is not fully developed in the States' memorandum the Court need not resolve this issue or determine if it is a viable legal theory. *See Maddox v. United Network for Organ Sharing*, 787 F. Supp. 3d 1159, 1165 n.3 (W.D. Wash. 2025). In any event, they are clearly mistaken. *Ultra vires* claims may only proceed against a federal officer in their individual capacity. *Dugan v. Rank*, 372 U.S. 609, 622 (1963) ("In either of such cases the officer's action 'can be made the basis of a suit for specific relief against the officer as an individual . . .'") (*citing Malone v. Bowdoin*, 369 U.S. 643, 647 (1962)); *and see E.V. v. Robinson*, 906 F.3d 1082, 1086 (9th Cir. 2018). No defendant here is sued in their individual capacity. Dkt. # 1, ¶ 41. Moreover, to survive a sovereign immunity challenge, the claim against a government official, even if styled as an individual capacity claim for *ultra vires* or unconstitutional conduct, must not in substance seek relief from the Government. *Dugan*, 372 U.S. at 620 ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.") (internal quotations and citations omitted). The remedy sought by the States seeks both to compel a continuous flow of compensation to the grantees from the federal treasury and to restrain Defendants from performing their official duties. It cannot be squared with *Dugan*.

6 Neither 28 U.S.C.§ 1331 nor 28 U.S.C. §§ 2201-2202 waive sovereign immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983) (§ 1331); *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954) (Declaratory Judgment Act).



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

States have failed that test. There is no material difference between the claims that the States advance here and those that were found wanting in *NIH*, *California* and *Thakur.* In *Thakur*, like here, the plaintiffs argued that their grants were terminated by an arbitrary process and that the agencies were following a plan driven by new priorities whose application to them violated the change-in-position doctrine. The district court in *California* relied on a similar theory in issuing its TRO. *California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 78 (D. Mass. 2025). And Justice Jackson's description of the plaintiffs' claims that did not carry the day in *NIH* perfectly mirror the States' claims here. *NIH*, 145 S. Ct. at 2672-2673.[7] Because the States have failed to show that there is any material difference between the claims asserted in those cases and the claims Plaintiffs assert here, the Department's motion to dismiss should be granted.

## II. THERE IS NO JURISDICTION BECAUSE THERE HAS BEEN NO FINAL AGENCY ACTION

The States concede, as they must, that this Court has no jurisdiction over their APA claims absent a final agency action. And try as they might to invent a final agency action, the facts are indelibly against them. If the Department had taken a final agency action to terminate the grant agreements in question those grant agreements would have been terminated already, and the final agency action would be open and obvious. The States would not need to grasp at straws, as they do here, in an effort to manufacture one.[8] And those efforts come to naught because of the clear and undisputed fact that to date no grant agreement has been terminated and no grantee has had their

---

7 Justice Jackson characterized the *NIH* plaintiffs' claims as follows:

> These plaintiffs' legal claims have nothing at all to do with individual grant contracts, nor do the plaintiffs seek "past due sums" as relief. The plaintiffs do not argue that the Government shorted any of its contractual obligations. Rather, they claim the Government flubbed its most basic statutory one: to engage in reasoned decision-making. And they seek not damages for the Government's contract breach but a mandate that it comply with federal law over the course of the parties' "ongoing relationship." The plaintiffs, in other words, "asser[t] a grievance altogether different from the kind the [Tucker Act] concerns." And the grievance they assert is "a garden-variety APA claim,"—which means it likely belongs in federal district court.

*Id.* at 2672-2673 (citations and footnote omitted).

8 The Department disputes that the February guidance, which has been revoked, and the June guidance, which does not apply to grant terminations, are final agency actions or that they have any bearing on this dispute. In any event, as noted above, they cannot serve as the basis for an injunction preventing the Department from proceeding with grant terminations. *See NIH*, 145 S.Ct. at 2661-2662 (Barrett, J. concurring).



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

funding cut off.

A final agency action occurs only when a federal agency has "rendered its last word on the matter." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 478 (2001). Only then is its action "final" and thus reviewable. *Id.* The Department has indisputably not yet uttered its last word here. At the time that this action was filed and the temporary restraining order was entered, the Department was before the Court in *Washington I* asking for clarification as to whether a termination of the affected grant agreements would violate the injunction entered in that lawsuit. Dkt. # 50, p. 3 *n*.2. Clearly, the Department's decision-making was still in progress at that juncture and was not final.

The States have presented evidence only of pre-decisional planning. However, plans themselves are not a basis for jurisdiction under the APA even if they reflect an intent on the part of an agency to ultimately proceed in a particular manner. *See Ashford Univ., LLC v. Sec'y of Veterans Affs.,* 951 F.3d 1332, 1346 (Fed. Cir. 2020) (letter warning plaintiff that its participation in a particular VA program would be suspended if it did not cure deficiencies in its performance was not a final agency action). Whatever the States may believe their evidence demonstrates about the Department's intentions concerning the grantees, those intentions have not yet resulted in a single grant termination. Until that occurs, this Court has no subject matter jurisdiction.

The case law in the Ninth Circuit leads inexorably to the conclusion that there has been no final agency action here. Plaintiffs' effort to distinguish *San Francisco Herring Association v. U.S. Department of the Interior*, 946 F.3d 564 (9th Cir. 2019), goes nowhere. According to Plaintiffs, *San Francisco* stands for the proposition that a mere "threat" constitutes a final agency action. This argument fails both factually and legally. First, no evidence shows that the grantees have been threatened with anything. The notice sent to the grantees that the States characterize as "a threat" is no more than an "informational document" wherein the Department "merely express[d] its view of what the law requires." Such informational documents are not final agency actions. *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). And *San Francisco* cannot fairly be characterized as a case in which the Circuit held that a mere "threat" is a final agency action. Rather, the fishermen in that case were confronted "in water" by officers of the



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

agency who "order[ed] the fishermen to stop fishing." *Id.* at 580. According to the Court, these "in-water orders" were "a display of 'legal force' where 'immediate compliance' was expected." *Id.* Nothing remotely like that occurred here. Likewise, the States' ground for distinguishing *Southern California Alliance of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831 (9th Cir. 2021) is meaningless. The States ask the Court to ignore that case because "the guidance at issue was optional and did not bind anyone to do anything." Dkt. # 97, p. 20, *ll.* 13-15. Here, the States have not shown that the Department have bound the grantees to do anything either. Finally, *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce,* 128 F.4th 1089 (9th Cir. 2025)*, cert. granted sub nom. Dep't of the Air Force v. Prutehi Guahan,* ___ U.S. ___, 146 S. Ct. 1794 (2026), and *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016) do not help the States' argument. In *Prutehi Litekyan*, the Court found the existence of a final agency action because the agency issued a decision binding *itself* to a certain course of action while awaiting a local agency's decision on a permit application. *Id*. at 1108. The States have not shown that the Department has bound itself to any particular course of action here. In *Hawkes*, the government did not dispute that its jurisdictional determination "mark[ed] the consummation" of the Corps' decision-making process. *Id*. at 597 (quotation omitted). And in concluding that the jurisdictional determination carried legal consequences, the Supreme Court emphasized that the determination was "binding on the Government" for five years. *Id.* at 598 (quotation omitted). *Hawkes* thus bears no resemblance to this case, where the Department has not been shown to have bound itself or the grantees to do anything.

## III. THE JURISDICTIONAL PREREQUISITE FOR THE WAIVERS OF SOVEREIGN IMMUNITY IN TITLE VI AND TITLE IX ARE NOT PRESENT HERE

Plaintiffs have not shown that this Court has subject matter jurisdiction under either Title VI or Title IX of the Civil Rights Act of 1964.[9] A waiver of sovereign immunity must be strictly construed, in terms of its scope, in favor of the sovereign. *Sossamon v. Texas*, 563 U.S. 277, 292 (2011) (internal quotation marks omitted). Limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied. *Lehman*

9 Notably, the States' complaint does not allege that either Title VI or Title IX provides the jurisdictional basis for this lawsuit. *See* Dkt. # 1, ¶¶ 21-23.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

*v. Nakshian*, 453 U.S. 156, 161 (1981) (internal quotation marks omitted). The waiver of sovereign immunity in 42 U.S.C. § 2000d-2 applies only in the case of an "action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d-1 of this title." Title IX's waiver of sovereign immunity has a virtually identical requirement. *See* 20 U.S.C. § 1683 (requiring "a finding of failure to comply with any requirement imposed pursuant to 20 U.S.C. § 1682 of this title . . .").

No evidence of a finding by the Department under either statute has been placed into the record by Plaintiffs, nor is there any evidence of any action terminating or refusing to continue financial assistance. Without a cutoff of federal funding based on the necessary finding, the conditions for an exercise of jurisdiction under either statute do not exist. *See Wash. Legal Found. v. Alexander*, 984 F.2d 483, 488 (D.C. Cir. 1993); *and see Taylor v. Cohen*, 405 F.2d 277, 280 (4th Cir. 1968) ("Final action is the decision to terminate or continue financial assistance. Until this decision has been made, judicial intervention is not sanctioned by statute.")

Finally, both waivers of sovereign immunity in 42 U.S.C. § 2000d-2 and in 20 U.S.C. § 1683 are expressly subject to the condition that the challenged action is "not otherwise subject to judicial review." Here, if any grantee chooses to challenge the legality of a grant termination as a violation of either 42 U.S.C. § 2000d-1 or 20 U.S.C. § 1682, they have a judicial remedy in the U.S. Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1).

Congress was intentional in expressing the conditions that need to exist for the waivers of sovereign immunity embodied in these statutes to apply. The States' argument, which asks the Court to imply an exception to these conditions, cannot be squared with well-established principles of sovereign immunity law. *See, Lehman, supra.*

**CONCLUSION**

For the foregoing reasons, and for those reasons stated in its principal memorandum, the Department respectfully requests that its motion be granted and that this action be dismissed for lack of subject matter jurisdiction.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

**CERTIFICATION**

I certify that this memorandum contains 4,197 words, in compliance with LCR 7(e)(4).

DATED this 28th day of September 2026,

Respectfully submitted,

*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
E-mail: brian.kipnis@usdoj.gov

*Attorneys for Defendants*